The Chief Justice

delivered the Opinion of the Court.
Early in the year, 1830, John Bennet—who, though price an owner of slaves, seems to have been in principle opposed to slavery — liberated a female slave, then the mother of four children, and the wife of a colored man named Levi Jones, once also a slave, and who was emancipated by his master William Chenault, on the 31st of May, 1830, in the county of Madison in this State, where both Bennet and Chenault then resided.
About the date of Levi’s manumission, and probably on the same day, Bennet, being about to remove to Missouri, and not wishing to take with him, or to hold longer in slavery, the four children of the recently emancipated mother and father, sold and delivered them to Levi, for the inconsiderable sum of three hundred dollars, payable in three annual instalments, with legal interest from the date of the contract; which was not, however, committed to writing until some time after the date of the verbal contract, and the delivery of the children to Levi.
Bennet having emigrated from this state before the first instalment became due, returned in the autumn of 1831, on a visit, but received no portion of the price of the four children — Levi not then, seeming to be able to pay conveniently.
In May, 1832, Samuel Bennet, then and yet a citizen of Kentucky, procured from his father, the said John Bennet, in Missouri, a document purporting to be a bill of sale of the said four children, for the recited consideration of three hundred and thirty six dollars, the sum then Sue from Levi, according to the terms of his contract; find shortly afterwards abducted the three oldest of them, and whom he has ever since detained as his slaves, with out Levi’s consent.
One deft. a non-resident, tho’ notified of the suit, failed to answer. Answer by the other, showing the grounds on which he resists a decree.
Dismissal of the bill by the court below.
A colored man who has acquired a right to his children, born slaves, by purchase or otherwise, may maintain a bill in chancery for a specific execution of his contract of purchase or for their restoration when they have been wrong fully taken from him. For—
A court of equity has jurisdiction to enforce a contract for movable property, or to coerce its restoration to the rightful owner, from whom it has been taken, whenever the property is of such a peculiar character that the recovery of damages, in lieu of the specific thing, would be but an in adequate or in appropriate remedy: as where the object is to regain a family portrait, an ancient vase, an heir loom &c. And there can be stronger case of that class, than where a parent brings a bill to coerce the restoration of a child that has been abducted from him, and is held in slavery.
*334 In 1836, Levi filed a bill in Chancery against John and Samuel Bennet, praying for a decree, upon equitable terms, for restitution of his children, and averring that he had offered, and was still willing, to pay the full amount of the conventional price.
John Bennet never answered the bill, and Samuel Bennet resisted any decree for relief on two grounds: — first— because, as he insisted, the Chancellor had no jurisdiction; and, secondly — because, as he also alleged, the terms of the contract of sale to Levi, authorized John Bennet to vacate the sale, in the event of a failure by Levi to make punctual payment of any one of the annual instalments of the consideration; and which, as he averred, the said John had done by selling the children to him (Samuel,) for a valuable consideration.
Upon the final hearing of the cause, the Circuit Judge dismissed the bill, without prejudice—being, as we presume, of the opinion, that the appropriate remedy would be an action of detinue.
If Levi be entitled to any relief, we have no doubt that he may maintain a bill in Chancery, upon both principle and authority.
And, so far as the question of jurisdiction is concerned, it is not material whether Levi’s purchase was executed or only executory. There may, undoubtedly, be a decree for a specific execution of a contract for moveable property, whenever the right is clear and the remedy by action in a court of law is inadequate to the full and perfect end of the law in giving remedy by suit. And surely, if, in any case, a court of equity may specifically enforce a contract for personalty, it should do it for the flesh and blood of the party invoking the Chancellor’s aid. In such a case an ordinary legal remedy might be altogether unavailing, in consequence of the obstinacy, insolvency, or fraud, of the defendant; and nothing but a specific execution would be either satisfactory or just to the party complaining.
Upon the same ground, if the title to the children had been completely vested in Levi by the contract of sale, he might, if entitled to any relief, be unquestionably entitled to abill in Chancery for coercing restitution, with *335 out which there could not, either in judgment of law, or according to any reasonable presumption, in fact, be any adequate reparation.
Conflicting testimony as to the contents of a lost writing—the memorial of a contract: several witnesses who had heard the agreement recited by party to be charged by it, one of whom was present when it was made, giving it one character; the subscribing witness giving it a character very different-the contents of the writing taken to be as stated by the two former witnesses—chiefly on the ground—other circumstances conducing to the same conclusion—that the agreement as described by the subscribing witness, would be incongruous and unreasonable.
If a wrongdoer detain a family picture, or an ancient vase, or heirloom, or any other article of moveable property, the value of which to the rightful owner shall reasonably. exceed the vendible value, or any estimate a jury would be allowed to make of it, there can be no , , , doubt that a bill m equity, for restitution of the specific thing, may be maintained; because, m such a case, no action at law could be so effectual as a suit in chancery might be made to be, for securing restitution, and no allowable assessment of damages would afford a full indemnity. Why then, in a case of abduction, may not the father appeal to a court of equity for securing the restitution of his own child? The foundation of all equitable jurisdiction is the inappropriateness or inadequacy of the ordinary remedy in peculiar cases. And there can be no class of cases more eminently entitled to the extraordinary intervention of a court of equity than that to which this case belongs.
We have, therefore, no doubt that the Circuit Judge had jurisdiction.
And we are also of the opinion that, upon the facts as exhibited in the record, Levi is entitled to relief.
Having, by a sufficient affidavit as to its loss, laid a foundation for extraneous proof of the terms of the written memorial of the contract between himself and John Bennet, he proved by several witnesses, that they had heard the said Bennet recite the contract substantially as an executed sale, for three hundred dollars, payable annually with interest, without any essential addition to or qualification of those terms; and one of these witnesses was present was consummated, and describes it substantially in the same way.
One witness only, on the other side, and who says that, in August, 1830, he wrote the memorial of the contract, has described it as essentially different from that alleged in the bill, and identified by the other witnesses.
Tho’ the terms of a contract by which the owner of certain young slaves sold them to their father, may have been, that, if any of the instalments of the consideration were not punctually paid, or if the father should not treat the children well,—the vendor might revoke the contract: still, as all such breaches might be adequately repaired in damages, a court of eq. sho’d neither enforce, nor permit the exaction of the forfeiture. And one holding the vendor’s contract with full notice of all its terms; can be in no better condition than his vendor occupied before the assignment.
*336 This witness for the defendant describes the contract as altogether executory and contingent, depending for its final execution upon the punctillious performance by Levi, of his undertaking to make the prescribed payments, and depending, also, for its continued Validity, on the manner in which Levi should treat his children, and subject io revocation by John Bennet, virtually ad libitum, and almost indefinitely as to time. Bat such an agreement would be incongruous and unreasonable, and the testimony in support of it, is intrinsically incredible. Moreover, there is no proof, either that the written memorial,as described by this last witness, was conformable with the verbal agreement, or that Levi was privy to the execution of the described memorial; and according to uncontradicted testimony, John Bennet had in his own possession, the written obligation of Levi, showing the essential terms of the contract; yet, nevertheless, this writing has not been produced. Besides: if the contract had been such as that described by this subscribing witness, is it not rather marvellous that, on the eve of his removal to a foreign State, John Bennet, though so distrustful, delivered to Levi the possession of his children, and that, on his return more than a year afterwards, he neither spoke of, nor attempted to enforce, any condition of revocation or forfeiture? In addition to all which, tho fact that he afterwards made a bill of sale to his son, for the same disproportionate consideration which Levi had agreed to pay, implies that, not claiming any forfeiture, his only object was to obtain his money without another visit to Kentucky, and to place his son in his stead as to Levi and his children, and this deduction is corroborated by some other facts in the record.
But even if the contract had been precisely such as has been so minutely and elaborately described by the retentive subscribing witness — still, as adequate damages might be assessed for the breach of any one condition, or of all the conditions, a court of equity should neither enforce nor permit the exaction of any such forfeiture as that claimed in this case; and the more especially, as Levi does not appear to have been culpably or injuriously delinquent, and Samuel Bennet, if he ever paid any *337 thing to his father, had full notice of Levi’s rights, and should stand just as his father did prior to the date of the bill of sale from the one to the other.
The vendors absence from the state, and the failure to show any demand made in his behalf, exempt the vendee from the imputation of negligence or injustice.
One who has taken away and detained wrongfully the children of a colored man, is liable to him, for damages, equal to the value of their hire.
A party, by his failure to answer tho’ notified of the suit, admits the contract &c. set up in the bill; and a subsequent purchaser from him, of slaves sold by the contract, having notice of its terms, is in no better condition than his vendor.
The restoration of slaves being decreed against a party who is, also, liable for their hire, in favor of one who owes for the purchase of them—the amount of hire is to be ascertained by a jury, or a commissioner, and, if it exceeds the debt, the surplus must be decreed to the party entitled to it; if it is less than the debt, the debtor is to have a day in court for the payment of the balance, upon which, the slaves are to decreed to him.
The absence of John Bennet from Kentucky, and the failure to prove any demand for any portion of the three hundred dollars since 1831, exempt Levi from the imputation of wilful negligence or injustice; and therefore, had the contract of sale been executory, we would perceive no insuperable objection to a decree for the specific execution of it.
But we are satisfied that the contract was fully executed, excepting only as to the payment of the consideration; and that, therefore, the abduction and detention of the children by Samuel Bennet, were unauthorized and tortious. He should, therefore, be compelled to pay damages for the wrongful detention, and make restitution of the children, upon, receiving the price which his father would have been entitled to receive from Levi, and the accruing interest thereon from the date of the contract in 1830.
By failing to answer, though notified to do so; John Bennet has admitted the contract as described in the bill, and the alleged title to the relief sought; and Samuel Bennet cannot object, any more than his father might, to the decree just indicated, upon the ground that the contract between Levi and his father was executory, and has been forfeited in equity.
We are, therefore, of the opinion that, upon the return of the cause to the Circuit Court, a jury should be empanneled, or an auditor appointed, to ascertain the reasonable value of the use of the three children in the possession of Samuel Bennet, from the time when he took them, to the date of the inquisition; and if the amount so to be assessed shall exceed the aggregate amount due-from Levi, under his contract with John Bennet, the balance should be decreed to him, together with a restitution of his children. But, if the assessment should not extinguish the debt, the Court should make a set-off as *338 far as it will go, and give day for the payment of the balance due from Levi, and, on his paying that balance, he should have a decree for the restoration of his children to himself. Decree reversed, and cause remanded.